The opinion of the court was delivered by
Duncan, J.
I will first state for what purpose the rejected evidence was not offered. It was not offered to abridge the debt secured by the mortgage, by contradicting that instrument by parol evidence. Nor was it offered to alter the contract or agreement *240 of the parties by proving any thing inconsistent with the deed. It was offered for a quite different purpose; to show a want of full consideration; that is, that the mortgagor never received from the mortgagee the whole consideration money, and that the mortgagee is perverting the mortgage fraudulently, to enforce the payment of money not justly due, a loan on which the amount never was advanced by him.
And, so far from this being a novelty, or in opposition to the known laws of the land, this relief from oppression, in this mode of evidence, and under this plea, courts of justice have been occupied in administering, for nearly one hundred years, in Pennsylvania.
In 1768, Swift v. Harkins and others, (1 Dall. 17,) in debt on bond, on the plea of payment, the defendants offered to give no consideration in evidence; but it was objected to, as here, that the consideration of a bond was not inquirable into. It was answered and ruled by the court, that there being no court of chancery, to prevent a failure of justice, there is a necessity of letting the defendant in, under the plea of payment with leave, &c. to prove mistake or want of consideration, and this, the Chief Justice said, he had known to be the constant practice for thirty-nine years past.
This case may be called the Magna Charta of this branch of equity, and has been ever since followed, and rules of court, universally established, requiring notice of the special matter, fraud, or failure of consideration, intended to be given in evidence in avoidance of the bond. This notice answering to a bill in equity-for relief, on the ground of fraud, accident, or mistake; and our common law courts, by the instrumentality of a jury, granting relief, just as the chancellor does, according to the dictates of his conscience, governed by equitable rules, and not by arbitrary discretion, which are as binding on him as rules of law are on the judgment of courts. A mortgage, which is but a security for the payment of money, is governed by the same rules as a bond. It is an axiom, that under this plea, with notice, the defendant may give in evidence any thing which shows, that ex equo et bono, he ought not to pay; and courts will direct juries to presume that to: have been paid which in equity and good conscience ought not to be pai<).
It is impossible to show the facts in avoidance of the instrument, unless it were permitted to receive the parol evidence. The evidence offered in substance was, “ that the mortgagor never received the consideration to the full amount of the mortgage money. The whole sum of five hundred dollars was not paid, but a part of it by consent remained in the hands of the mortgagee, to be paid by him to the mortgagor, whenever he called for it, and that he never did call for it, and that the mortgagee now insists on using his mortgage to enforce the payment of the whole sum, not be *241 cause he loaned that sum, but because, (as he alleged,) he had kept it by him, unused, until its interest amounted to as much as the principal.”
This is a doctrine totally disconnected from that to which it has been compared by the counsel of the defendant in error, — that of estoppel and contradicting a deed by parol evidence; and this must have been the mistake of the Court of Common Pleas, in the hurry of a trial. The counsel, in supporting his position, has been strong in argument, and deep in research, but has failed in its application. The mortgagor admits he freely executed the deed, and that it contains the agreement of the parties, but the defence he sets up, is, that he executed it in confidence that he would receive from the mortgagee, whenever he desired, the money; and if this forms no defence to the extent of the deficit, then it would equally hold, if-he had never received one cent of the five hundred dollars, the mortgagee "could recur to his mortgage, and recover the ^hole. The mortgagor is without remedy, unless he now obtains the deduction.
Mortgages are often executed^ frequently acknowledged, and not unfrequently delivered, before the payment of the money loaned, and more especially now mortgagees must have a sharp look out, as the lien only obtains from the time of recording. The lender might not have the full amount in his, desk, and informs the borrower he can call to-morrow; and, when he calls, the mortgagee meets him by saying, “ There is your bond arid your mortgage, — you cannot contradict this, — there is a principle of law which estops you from' saying you did not receive the money, — -your mouth is stopped from “uttering the truth, — you cannot deny your .hand and seal.” This would .be giving a sanction to bonds and mortgages — a sanction that even a judgment does not hold; for that may be inquired into, arid fraud will vitiate the most solemn proceedings, and the judgments of the highest courts of judicature. Estoppels which conclude against the truth are always odious in law. It is said, that whatever be the conscience of the case, the mortgagor is estopped. What is the case? Who is estopped ? The very person supposed to be estopped, is the very person supposed to be defrauded. This is so much against conscience and against justice, that one would weep to find it-the law. But it is not the law. A man is not estopped from saying, in a court of law, that he entered into an obligation on an illegal consideration; nor was he, even in a court of equity, estopped to say, that the consideration of .his obligation has failed in whole or in part. If equity did not relieve, she would net forget her name.
It is more from a bigotted adherence to the odious doctrine of estoppel, and. the obsolete conceit that'the bond is a gift of the money, that courts of law do not inquire into the failure of consideration, than any good reason.. Anciently credit was uncommon, bonds r^re. Such importance was given to the seal, (for few then *242 could write,) that it stamped the instrument with inviolability, at least, placed it out of the reach of the ordinary courts of justice, and forced the party defrauded into chancery. There was a time in the law, that a man was not permitted to allege his own disability in avoidance of his bond, because, as was said to an insane man, if you were mad when you gave this bond, how do you know it? The absurdity of this doctrine was exposed in the House of Lords by Lord Mansfield, in the celebrated case of The Chamberlain of London v. Evans, and then exploded. It is certain that courts of law have relaxed, and will now receive an averment of illegal consideration, as smuggling, &c. For though the law allows all bonds to be prim,a facie evidence of a good consideration, yet the defendant is not prevented from showing it to be vicious, and in equity may show that the consideration has failed: for chancery will relieve against a bond without condition performed, as in consideration of a debt assigned, which cannot be recovered. 2 Com. Dig. 320; So strict was the common law, that until the statute of Anne, the debtor was forced into chancery to be relieved from the penalty of his bond. The retaining of the money, and enforcing payment of it, is a fraud, not in the execution of the mortgage, but its abuse. Very like that case, is Campbell v. M‘Clenachan, 6 Serg. & Rawle, 171, where a promise by one party induced the other to execute the instrument. If a party be induced by promises to execute a writing, chancery will grant relief: it is a clear ease of fraud. 1 Vern. 296. So if a paper be obtained for one purpose, and used for another. Birchfield v. Castleman, Addis. 181, This is one of the very eases in which chancery grants relief» In Piddock v. Brown and others, 1 P. Wms. 239, it was declared by the Lord Chancellor, “ that upon producing a bond or mortgage, this is, prima facie, good evidence of the debt, but where-ever there are manifest signs of fraud in the obligee, in such case he ought to be put to the proof of the money really due to him; and though he may thereby lose a part of the money really due him, for want of being able to make sufficient proof, this is but a just punishment of him for the fraud of which he' plainly appears to have been guilty of, and tends to a proper discouragement of others.”
The later cases in our courts are in exact conformity to this principle, to show what passed at the time of executing the instrument, to prove fraud, mistake, or trust, not inconsistent with the deed. Christ v. Devebaugh, 1 Serg. & Rawle, 466. Cozens v. Stephenson, 5 Serg. & Rawle, 421. This was the nature of the evidence offered here. The court are clearly of opinion this evidence ought to have been received. Baring v. Shippen, 2 Binn, 154, a much litigated case, where the bond Was in the hands of a bona Jide assignee, parol evidence was received to show that it was given for one purpose and fraudulently perverted to another; and the court declared that under this plea fraud, either in the *243 execution or consideration of a bond may be given in evidence; and it is worthy of observation, that this rule of Pennsylvania law has been adopted in the Circuit Court of the United States for the district of Pennsylvania, and it was there held, that in debt on bond, under this plea, the defendant might give evidence of that which shows, that ex equo et bono the plaintiffs ought not to recover. dipril, 1808, MS. Rep. Norris's Peake, 410.
Ex equo et bono, the creditor was not entitled to recover more from the moi'tgagor than the money he loaned him. The mortgage being executed on his express promise, or his promise implied from the nature of the contract, to pay the money he had retained on the suggestion of the mortgagor, stood as a security for the money really advanced, and no more, and the court, in such case, would direct the jury to presume the retained part to have been paid back, to consider it as so much paid on the mortgage.
I do not say, how far the evidence would or ought to have satisfied the jury; but it ought to have been received to counteract the prima facie evidence arising from the mortgage. This prima facie evidence ought always to stand for proof of the actual sum, until the contrary is proved. This opinion has been extended, in a plain case, farther than the subject would seem to require; but it was considered as a duty, in this case, to prevent misconception on an important subject of general concern and of daily occurrence iii all our courts.
Judgment reversed, and a venire facias de novo awarded.